**Charles H. BERRY, Jerald S. Reynolds, and Jesse L. Carter, Jr. Plaintiffs–Appellees/Cross–Appellants,**

v.

**STEVINSON CHEVROLET, a Colorado corporation; Stevinson Toyota, a Colorado corporation; Stevinson Toyota East, Inc., doing business as Mark Toyota, a Colorado corporation; and Charles Stevinson, individually, Defendants–Appellants/Cross–Appellees,**

**and**

**Reggi Bonino, individually, Defendant.**

**The Lawyers' Committee for Civil Rights; The Colorado Hispanic Bar Association; Equal Employment Opportunity Commission, Amici Curiae.**

Nos. 93–1031, 93–1055, 93–1072, 93–1127 and 93–1354.

United States Court of Appeals, Tenth Circuit.

Jan. 19, 1996.

Lynn D. Feiger (Darold W. Killmer, Gilbert M. Roman, and John A. Culver with her on the briefs) of Feiger, Collison & Killmer, P.C., Denver, Colorado, for Plaintiffs–Appellees/Cross–Appellants.

John M. Husband of Holland & Hart (Gregory A. Eurich and Brian M. Mumaugh of Holland & Hart, and Thomas S. Nichols of Davis, Graham & Stubbs, with him on the briefs), Denver, Colorado, for Defendants–Appellants/Cross–Appellees.

Paul D. Ramshaw, Attorney (James R. Neely, Jr., General Counsel, Gwendolyn Young Reams, Associate General Counsel, and Vincent J. Blackwood, Assistant General Counsel, with him on the brief), U.S. Equal Employment Opportunity Commission, Washington, DC, for Amicus Curiae EEOC.

Brian E. Bates of Antonio Bates Bernard Haenel, Professional Corporation, Denver, Colorado; and Richard T. Seymour and Sharon R. Vinick of Lawyers' Committee for Civil Rights Under Law, submitted a brief for Amicus Curiae Lawyers' Committee.

Roberto L. Corrada, Assistant Professor of Law, University of Denver College of Law, Denver, Colorado, submitted a brief for Amicus Curiae The Colorado Hispanic Bar Association.

Before SEYMOUR, Chief Judge, HENRY, Circuit Judge, and COOK,* District Judge.

SEYMOUR, Chief Judge.

Jesse L. Carter, Jr., Charles H. Berry, and Jerald S. Reynolds, who are African Americans, filed this action under 42 U.S.C. § 2000e–5 (Title VII) and 42 U.S.C. § 1981 against several auto dealerships owned and principally managed by defendant Charles Stevinson. All plaintiffs alleged discriminatory discharge under Title VII. In addition, Mr. Berry alleged a failure to promote claim under 42 U.S.C. § 1981, and Mr. Reynolds brought a retaliation claim under Title VII. After a bench trial, the district court concluded that defendants were liable for back pay to Mr. Berry under Title VII and section 1981. The court also held defendants liable for compensatory damages to Mr. Reynolds for unlawful retaliation. The court rejected Mr. Reynolds' Title VII claim on the basis of race discrimination, and rejected Mr. Carter's Title VII claim as time-barred. It granted plaintiffs attorney's fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5. *See Berry v. Stevinson Chevrolet*, 804 F.Supp. 121 (D.Colo.1992).

Defendants appeal the court's holding with respect to Mr. Reynolds' claim, and the award of attorney's fees. In the cross-appeal, all plaintiffs contend that the 1991 Civil

---

* The Honorable H. Dale Cook, Senior Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation.

Rights Act's provisions for damages and a jury trial should apply retroactively to this case. Mr. Reynolds also asserts that the court abused its discretion in denying his post-trial motion to conform to the evidence and in dismissing his state law claims. We affirm in part and reverse in part.

## I.

### A.

Mr. Carter was originally employed at Toyota West. He was transferred to Mark Toyota in 1985 and discharged in July 1987. He filed an EEOC race discrimination charge that month. Although the EEOC mailed his right to sue notice in June 1988, the post office returned the unclaimed notice after three delivery attempts. Almost two years later, Mr. Carter joined Mr. Berry and Mr. Reynolds in filing this action.

The district court found that the notice was mailed to Mr. Carter by certified mail and that he failed to receive it as a result of his own neglect and inattention. Because a plaintiff must bring a Title VII claim within ninety days of receipt of the right to sue notice, the district court concluded that Mr. Carter's action was time-barred. On appeal, Mr. Carter contends that the 1991 Civil Rights Act provision for a jury trial applies retroactively and that a jury should therefore have decided whether he filed his claim in a timely manner.

### B.

Mr. Berry, a used car salesperson at Stevinson Chevrolet (Chevrolet West), quit his job after eleven years of employment and filed a Title VII constructive discharge suit on the basis of race discrimination. He presented significant evidence that the management at Chevrolet West consistently made derogatory racial comments to him and ultimately failed to promote him to a management position for race-charged reasons. The district court found that the management at Chevrolet West engaged in discriminatory conduct which produced working conditions that a reasonable person would consider intolerable. It further found that although Mr. Berry expressed his desire for a promotion and was qualified to receive one, the management at Chevrolet West refused to promote him because of race and instead gave the promotion to less qualified white individuals. Applying the framework set out in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the district court concluded that Chevrolet West had constructively discharged Mr. Berry on the basis of race in violation of Title VII. The court also concluded that because Mr. Berry's promotion to sales manager would have created a new contract, Chevrolet West violated 42 U.S.C. § 1981. Finally, the court concluded that Mr. Stevinson was not personally liable on Mr. Berry's Title VII claim. The court awarded Mr. Berry $72,822 in back pay. On appeal, defendants contest only the attorney's fees awarded Mr. Berry.

### C.

Mr. Reynolds was new car sales manager at defendant Stevinson Toyota (Toyota West). While Mr. Reynolds was employed as sales manager, Toyota West was notified that it had earned a sales bonus from Toyota Motor Sales, U.S.A., Inc. (Toyota). Toyota West allocated $1000 to Steve Szekula and $500 to Dennis Swan, both of whom were sales managers at Toyota West. Mr. Szekula and Mr. Swan quit their jobs in April 1989, before the dealership received the resulting bonus checks. Mr. Stevinson, the owner of the dealership, noted on their personnel files that neither should be rehired.

After Mr. Szekula left Toyota West, he pestered Mr. Reynolds about whether the bonus check had arrived. Mr. Reynolds then withdrew funds from his personal savings to cover both Mr. Szekula's and Mr. Swan's bonuses. On May 3, 1989, he gave Mr. Szekula the cash equivalent of both bonuses and asked Mr. Szekula to deliver Mr. Swan's bonus to him. The next day, the bonus checks arrived from Toyota. Mr. Reynolds believed "that he had implied authority to negotiate the checks for Szekula and Swan," *Berry*, 804 F.Supp. at 129, and asked a secretary at Toyota West to endorse the checks in Mr. Szekula's and Mr. Swan's respective

names. Mr. Reynolds then cashed the checks and paid himself back for the cash he had given to Mr. Szekula and Mr. Swan.

Toyota West terminated Mr. Reynolds in August 1989, after which he began work at Douglas Toyota. In February 1990, Mr. Reynolds met Mr. Szekula for lunch to discuss Mr. Szekula's possible employment with Douglas Toyota. During lunch, Mr. Reynolds told Mr. Szekula that he was contemplating filing an EEOC race discrimination complaint against Toyota West. Mr. Szekula interviewed at Douglas Toyota and accepted a job there. Nonetheless, he interviewed for a new position at Toyota West shortly thereafter. Although the general sales manager at Toyota West told Mr. Szekula during the interview that no jobs were available, Mr. Szekula soon received instructions to contact Mr. Stevinson at home. Contrary to usual hiring practice, Mr. Stevinson did not discuss compensation or other terms of employment. Mr. Stevinson offered Mr. Szekula a management position at Toyota West despite having flagged his file with a "not for rehire" notation. Although Mr. Stevinson denied discussing Mr. Reynolds' EEOC complaint during his interaction with Mr. Szekula, the district court found Mr. Stevinson's testimony unbelievable and concluded that Mr. Szekula discussed the impending EEOC action both with Mr. Stevinson and the general sales manager. *Id.* at 130.

After Mr. Szekula returned to work at Toyota West, Mr. Stevinson informed the general sales manager that Mr. Szekula had received an IRS Form 1099 concerning his bonus and that Mr. Szekula had not received the money. Mr. Szekula then ordered a copy of his bonus check from Toyota's national distributor and met with an investigator from the Jefferson County Sheriff's Office to complain of forgery. The investigator learned that a secretary at Toyota West had signed Mr. Szekula's name to the bonus check. Based on a complaint by Mr. Szekula, the Jefferson County District Attorney filed criminal charges of theft and forgery against Mr. Reynolds. Pursuant to regular practice, the bank at which Mr. Reynolds deposited the bonus checks filed a civil action against

him. Mr. Reynolds was acquitted on the criminal charges.

Mr. Reynolds filed a two-pronged Title VII claim, alleging that Toyota West discriminated against him on the basis of race and that it unlawfully retaliated against him for filing a complaint with the EEOC. The district court rejected his discriminatory discharge claim, finding that the sole reason for his termination was his unsatisfactory performance. Mr. Reynolds does not appeal this holding.

The district court concluded, however, that Toyota West had violated Title VII's anti-retaliation provision, 42 U.S.C. § 2000e–3(a), and awarded Mr. Reynolds damages. The court found it "more probable than not that Stevinson and others in management at Toyota West caused Szekula to initiate the criminal complaint with the sheriff's office for the purpose of retaliating against Reynolds for his having filed a discrimination charge with the EEOC." *Berry*, 804 F.Supp. at 131. The court awarded Mr. Reynolds $265,000 in compensatory damages for the "extreme emotional distress, suffering, embarrassment, humiliation, loss of reputation, standing in the community ... he experienced as a proximate result of Toyota West's and Stevinson's retaliation," as well as for the legal fees he incurred in defending against the theft and forgery charges. *Id.* at 137. Defendants appeal the award of compensatory damages and attorney's fees.

## II.

### Title VII Liability

Defendants contend the district court erred in applying Title VII's anti-retaliation provision to this case. Section 2000e–3(a) provides in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter.

42 U.S.C. § 2000e–3(a). In particular, defendants argue that (1) section 2000e–3(a) does

not protect former employees from retaliation; (2) filing criminal charges is not an "unlawful employment practice" and therefore plaintiffs have not presented a prima facie case; and (3) even if the section applies in these circumstances, defendants nonetheless offered a legitimate, nondiscriminatory reason for causing the report of Mr. Reynolds' forgery. We address each of defendants' allegations in turn.

### A.

In concluding that defendants were liable to Mr. Reynolds on his retaliation claim, the district court relied on *Rutherford v. American Bank of Commerce*, 565 F.2d 1162, 1165 (10th Cir.1977), to hold that Title VII permits former employees to bring Title VII retaliation actions against their former employers. Defendants argue that retaliation claims by former employees are beyond the scope of Title VII and ask us to reconsider our decision in *Rutherford*.

In *Rutherford*, the plaintiff sued her former employer under section 2000e–3(a) upon learning that the employer had revealed in reference letters and conversations that the plaintiff had filed Title VII sex discrimination charges against the former employer. The section states that employers may not retaliate against "employees" or "applicants for employment." After noting that "[a] statute which is remedial in nature should be liberally construed," we interpreted "employee" in section 2000e–3(a) to include former as well as present employees. *Rutherford*, 565 F.2d at 1165.

■ Defendants concede that we construed section 2000e–3(a) to protect former employees but nonetheless encourage us to "reconsider" our decision in *Rutherford*. Absent an intervening Supreme Court or en banc decision justifying such action, we lack the power to overrule *Rutherford*. *See United States v. Walling*, 936 F.2d 469, 472 (10th Cir.1991) ("One panel of the court cannot overrule circuit precedent."); *United States v. Berryhill*, 880 F.2d 275, 277 (10th Cir. 1989), *cert. denied*, 493 U.S. 1049, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990). Nor are we inclined to do so in any event.

Defendants argue that the Supreme Court's decision in *EEOC v. Aramco Services Co.*, 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), constitutes an intervening case requiring our reconsideration of *Rutherford*. *Rutherford* eschewed a literal reading of the section in favor of a reading that comported with the broad, remedial goals of Title VII. *Rutherford*, 565 F.2d at 1165. Defendants argue that *Aramco* stands for the proposition that a plain or literal reading of Title VII must govern judicial interpretation. We disagree. *Aramco* concerned a distinct tenet of statutory interpretation—the presumption against extraterritorial application of United States laws. In *Aramco*, the Supreme Court held that Congress did not evince a clear intent to make Title VII applicable beyond national boundaries and therefore a United States employee working in Saudi Arabia could not bring a Title VII action against his United States employer. *See Aramco*, 499 U.S. at 250, 111 S.Ct. at 1231–32. While *Aramco* and *Rutherford* both interpret the reach of Title VII, their interpretations are rooted in distinct principles of statutory construction. *Aramco* only interprets Title VII with respect to the presumption against extraterritoriality, a tool of statutory interpretation which was irrelevant in *Rutherford*. Consequently, *Aramco* does not undermine *Rutherford*'s holding.

### B.

■ The general approach to Title VII suits set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94, also applies to retaliation claims under section 704(a). *Love v. RE/MAX of America, Inc.*, 738 F.2d 383, 385 (10th Cir.1984). The plaintiff must first set forth a prima facie case of retaliation by establishing (1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's adverse action. *Id.* (citing *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633

(1982)). Once a plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* (citing *Burrus,* 683 F.2d at 343). If the district court declines to dismiss a Title VII claim for failure to make a prima facie case and the defendant presents evidence of a legitimate business reason, the plaintiff must then be allowed to demonstrate that the defendant's offered reasons are a mere pretext for discrimination.

In the instant case, the district court concluded that Mr. Reynolds established a prima facie case of retaliation by Toyota West and Mr. Stevinson. In reaching this conclusion, the court found that (1) Mr. Reynolds filed an EEOC complaint; (2) Mr. Stevinson and Toyota West caused individuals to report a purported forgery; and (3) that such adverse action would not have occurred if Mr. Reynolds had not filed his EEOC complaint. *Berry,* 804 F.Supp. at 134.

Defendants contend on appeal that reporting a suspected crime is not an unlawful employment practice and therefore is beyond the scope of the anti-retaliation provisions. Defendants distinguish reporting a suspected crime from adverse employment actions, such as failing to provide a letter of recommendation, demotion, and giving adverse evaluations, on the grounds that the latter are integrally connected with the employment relationship. We reject this argument for two reasons. First, those courts that follow *Rutherford* include malicious-prosecution-like scenarios within the ambit of section 704(a). Second, retaliatory prosecution can have an adverse impact on future employment opportunities and therefore can be an adverse employment action.

We have not previously examined whether the filing of charges constitutes an adverse employment action. Other courts concluding that Title VII extends to former employees have held that the filing of charges can constitute the requisite adverse action. For example, in *Beckham v. Grand Affair, Inc.,* 671 F.Supp. 415 (W.D.N.C.1987), an ex-bartender was arrested and prosecuted for criminal trespass on her former employer's premises after she filed an EEOC sex discrimination complaint. After citing *Rutherford* and holding that former employees are included under the anti-retaliation provisions of Title VII, the court further held that the arrest and prosecution in response to her EEOC complaint was an adverse employment action. *Id.* at 419. Likewise, in *EEOC v. Virginia Carolina Veneer Corp.,* 495 F.Supp. 775 (W.D.Va.1980), the court first held that section 704(a) extends to former employees and then held that an employer's filing of a civil defamation action in response to a former employee's filing of an EEOC sex discrimination complaint constituted an adverse employment action that was actionable under section 704(a). *Id.* at 778.

We agree that malicious prosecution can constitute adverse employment action. In *Rutherford* we stated that "[a] statute which is remedial in nature should be liberally construed." 565 F.2d at 1165. By including former employees as "employees" under section 704(a), *Rutherford* extends the reach of section 704(a) beyond an existing employee/employer relationship. It would be illogical to define a section 704(a) employee liberally to include former employees and to simultaneously define an adverse employment action narrowly by limiting it to those formal practices linked to an existing employee/employer relationship. We therefore hold that the filing of charges against a former employee may constitute adverse action.

Furthermore, we do not agree with defendants' assertion that retaliatory prosecution is not connected with present or future employment. While providing a tainted employment reference may have a more direct effect on a former employee's future employment prospects, criminal prosecution will also have an obvious impact. A criminal trial, such as that to which Mr. Reynolds was subjected, is necessarily public and therefore carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects. *See generally, Passer v. American Chemical Soc.,* 935 F.2d 322 (D.C.Cir.1991) (holding that cancellation of benefit to honor plaintiff in retaliation for filing an age discrimination complaint

constitutes adverse employment action because of public humiliation involved).

After the district court held that Mr. Reynolds had set forth a prima facie case, the burden of production shifted to defendants. The district court stated that "Toyota West and Stevinson advance no legitimate reason for their actions. As a matter of fact they deny they played any role at all in causing Szekula to report the alleged forgery." *Berry,* 804 F.Supp. at 134. Defendants now argue that even if Mr. Reynolds had established a prima facie case, they nonetheless offered a legitimate, non-retaliatory explanation for their actions and therefore should be relieved of liability. Although they denied encouraging Mr. Szekula to file criminal charges, defendants argue on appeal that their reasonable belief that Mr. Reynolds had forged the checks served as a legitimate rationale to counter Mr. Reynolds' prima facie case. In response, Mr. Reynolds contends that at trial defendants denied any involvement in Mr. Szekula's decision to report Mr. Reynolds' conduct to the authorities and that they cannot assert for the first time on appeal an allegedly legitimate, non-discriminatory reason for causing Mr. Szekula to report Mr. Reynolds' forgery.

█ Mr. Stevinson repeatedly denied any role in Mr. Szekula's decision to file charges. In fact, Mr. Stevinson denied any knowledge of the alleged forgery incident until investigators contacted him about the original bonus checks. Mr. Szekula bolstered this testimony, stating that he never discussed the forgery incident with Mr. Stevinson. While Mr. Stevinson allegedly believed that Mr. Reynolds had forged the checks, he claimed to have acquired this belief subsequent to the initiation of the investigation and Mr. Szekula's decision to file charges. This post hoc belief cannot be offered as a legitimate reason prompting the initiation of charges. Based on our review of the record, we agree with Mr. Reynolds that defendants did not raise at trial a legitimate reason for causing criminal charges to be filed and therefore waived the issue on appeal. *See Gillihan v. Shillinger,* 872 F.2d 935, 938 (10th Cir.1989).

█ Even if defendants had properly raised their legitimate, nonretaliatory reason

for their action at trial, they would not be relieved of liability. Once a plaintiff and a defendant meet their initial burdens and the plaintiff has been allowed to demonstrate that the defendant's purported reasons were actually pretexts, the court must decide " 'which party's explanation of the employer's motivation it believes.' " *Love v. RE/MAX,* 738 F.2d at 386 (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). Often a "plaintiff's initial evidence, combined with effective cross examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. In the instant case, the district court believed Mr. Reynolds' explanation. The court found

> it to be more probable than not that Stevinson and others in management at Toyota West caused Szekula to initiate the criminal complaint ... for the purpose of retaliating against Reynolds for his having filed a discrimination charge with the EEOC. The sequence and timing of these events, including Szekula's delay in going to the authorities, is sufficient probative circumstantial evidence that Toyota West and Stevinson used and encouraged Szekula to initiate this investigation and prosecution.

*Berry,* 804 F.Supp. at 131. The court explicitly based this finding on its judgment of witness credibility.

> I closely observed Reynolds when he testified. My judgment of his demeanor and testimony, in light of all the evidence in this case, drives my determination that he was credible in all respects. To the contrary, defense witnesses lacked persuasive credibility in material aspects of their testimony. Stevinson may be devoid of racial bias. However, he presents himself to be such a person to the point of hubris.

*Id.* Defendants do not contest the validity of these factual findings. Even if defendants had asserted a legitimate, nonretaliatory explanation for their actions, the district court found that the explanation was a mere pretext for defendants' retaliatory acts. We therefore hold that Mr. Stevinson and Toyota

West are liable to Mr. Reynolds for retaliation.

## III.

### Title VII Remedy

After concluding that Mr. Stevinson and Toyota West were liable to Mr. Reynolds under section 704(a), the district court awarded Mr. Reynolds $265,000 in compensatory damages. Title VII authorizes courts to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ... or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g). Recognizing that "[t]he standard Title VII remedies of reinstatement and back pay are unavailable to Reynolds" and further recognizing that "no equitable relief [is] appropriate under the circumstances," the district court held that "all appropriate remedies are available to compensate him for his injuries" and awarded compensatory damages. *Berry*, 804 F.Supp. at 136. The district court based its decision on *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), which states: "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* at 66, 112 S.Ct. at 1032–33 (quoting *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)). The district court nonetheless recognized that the rule only applies absent a "clear direction to the contrary by Congress." *Berry*, 804 F.Supp. at 136 (quoting *Franklin*, 503 U.S. at 70–71, 112 S.Ct. at 1035–36). The court further recognized that, in contrast to the sexual harassment claim at issue in *Franklin*, Title VII's anti-retaliation provision "expressly provides some relief for a violation," but noted that relief is "severely limited" to equitable relief. *Berry*, 804 F.Supp. at 136. The court concluded that "[n]o meaningful difference exists between a statute that is totally silent about the remedies available for its violation and one that provides a remedy that fails to redress plaintiff's injury. Thus, *Franklin* controls my analysis." *Id.* The court denied Mr. Reynolds' request for punitive damages.

On appeal, Mr. Reynolds and defendants agree that Title VII did not expressly provide for damages at the time that plaintiffs filed this action. Defendants argue that the conspicuous absence of congressional provision for damages precludes relief in the instant case. Mr. Reynolds maintains that, given the broad language in Title VII's relief provision, courts are entitled to stray from traditional relief to make victims whole. Alternatively, all plaintiffs cross appeal, arguing that the Civil Rights Act of 1991, which expressly provides for compensatory damages, should apply retroactively to those cases pending at the time of its enactment, including this one.

■■■ The Supreme Court has since held that the compensatory damages provisions in the 1991 Civil Rights Act would not be applied retroactively to cases filed before its effective date. *Landgraf v. USI Film Prods.*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Because the instant case was filed in May 1990, well before the effective date of the Act, we reject plaintiffs' argument that the damage provisions should apply retroactively to this case.[1]

We now address whether the compensatory damages awarded Mr. Reynolds were available under Title VII prior to the enactment of the 1991 Civil Rights Act. We hold that they were not.

The district court's reliance upon *Franklin* to award compensatory damages was misplaced. As the court recognized, *Franklin* involved an implied right of action under Title IX. "Congress [had] given no indication of its purpose with respect to remedies." *Franklin*, 503 U.S. at 68, 112 S.Ct. at 1034. Title VII, on the other hand, clearly states the remedy available. 42 U.S.C. § 2000e–5(g).

Moreover, we have held that compensatory damages are not available under Title VII.

---

1. Plaintiffs also assert that the jury trial provision of the 1991 Civil Rights Act should apply retroactively. This argument has likewise been foreclosed by *Landgraf*, —— U.S. at ——, 114 S.Ct. at 1505.

*See Pearson v. Western Elec. Co.,* 542 F.2d 1150, 1151 (10th Cir.1976). In *Pearson,* as here, the plaintiff sued under Title VII, alleging race discrimination and requesting compensatory damages for "humiliation, loss of good credit standing and damage to his character in light of unproved [criminal charges]." *Id.* (citation omitted). We held that allowing compensatory damages could not be supported by the language or the legislative history of Title VII. *Id.; see also Manders v. Oklahoma ex rel. Dep't. of Mental Health,* 875 F.2d 263, 266 (10th Cir.1989) ("[I]t is a well-established rule that Title VII provides for equitable remedies and not compensatory ones."). We must therefore reverse the district court's award of compensatory damages.

## IV.

### State Law Claims

Exercising its discretion, the district court declined to retain pendent jurisdiction over plaintiffs' state law claims. *Berry,* 744 F.Supp. at 1036. In October 1990, Mr. Reynolds filed an amended complaint to conform to this decision, omitting all state law claims. Mr. Reynolds never contested the court's original decision to deny pendent jurisdiction. Following judgment in the instant case, Mr. Reynolds filed a motion to amend the pleadings to conform to the evidence pursuant to Fed.R.Civ.P. 15(b), contending that the district court tried the Colorado abuse-of-process claim with defendants' implied consent. In other words, Mr. Reynolds asked the court to revive a state law claim that it had previously dismissed merely because the issues were similar to those tried in conjunction with Mr. Reynolds' Title VII retaliation claim. The court denied this motion on grounds that its decision to deny pendent jurisdiction over state law claims precludes Mr. Reynolds from reasserting these claims via a Rule 15(b) motion. *See* Order dated Aug. 19, 1993, Aplee App. at 186.

■ We review the district court's denial of this motion for an abuse of discretion. *Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir.1994). After reviewing the record, and in light of the fact that the court had previously declined to exercise jurisdiction over this state law claim, we conclude that the court did not abuse its discretion in denying Mr. Reynolds' Rule 15(d) motion. However, the court initially justified its decision to deny pendent jurisdiction in part because "Title VII provides a prompt and effective remedy for employment discrimination." *Berry,* 744 F.Supp. at 1036. Because this justification has not proven true in this case, we believe that the district court should be given the opportunity to re-exercise its discretion and to reconsider its decision to dismiss the state law claims. We therefore remand this issue to the district court.

## V.

### Attorney's Fees

The district court granted Mr. Reynolds and Mr. Berry $324,894 in attorney's fees under 42 U.S.C. § 2000e–5 and 42 U.S.C. § 1988. In arriving at this figure, the court concluded that Mr. Berry was a prevailing party with respect to his section 1981 and Title VII discrimination claims and that Mr. Reynolds was a prevailing party with respect to his Title VII retaliation claim. The court then calculated the lodestar for these plaintiffs' claims. After disallowing a few specific fee requests, *see* Order dated Mar. 30, 1993, Aplt.App., vol. I at 245–248, the court further reduced the lodestar by twenty percent to reflect the fact that monetary damages fell far short of the amount sought. *Id.* at 9.

■ Defendants first argue that the district court abused its discretion in failing to discount the lodestar for imprecise time entries. "An attorney's fee award by the district court will be upset on appeal only if it represents an abuse of discretion." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1201 (10th Cir.1986). We will reverse subsidiary factual findings only if they are clearly erroneous. *Id.* We require that "lawyers keep meticulous time records that 'reveal ... all hours for which compensation is requested and how those hours were allotted to specific tasks'", *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir.1995) (quoting *Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir.1983)).

After reviewing the record, we conclude that the district court did not abuse its discretion with respect to this issue.

■ Defendants also contend the district court's award of attorney's fees was incorrect because the lodestar amount should have been reduced by at least one-third given that plaintiffs recovered only thirteen percent of the damages they sought. "If a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). *Hensley* authorizes district courts to reduce the lodestar to reflect limited success, although "[t]here is no precise rule or formula" for making such determinations." *Id.* at 436, 103 S.Ct. at 1941. In the instant case, the district court noted that Mr. Berry and Mr. Reynolds "had two main goals in maintaining this action: vindication of their civil rights and monetary compensation." Order dated Mar. 30, 1993, Aplt.App., vol. I at 249. The court then concluded,

> Berry succeeded completely and Reynolds succeeded partially on the first goal, but neither succeeded satisfactorily on the second ... The monetary damages they received ... fell far short of those they sought. Furthermore, Reynolds was unsuccessful on his Title VII discrimination claim.... To reflect the degree of success Berry and Reynolds achieved in this case, I will reduce the lodestar by 20%.

*Id.* After a thorough review of the record, we conclude that the district court did not abuse its discretion in failing to further reduce the lodestar on the action as it then stood. In denying Mr. Reynolds relief on his retaliation claim, however, we affected his overall success level and clearly undermined one of his two main goals in maintaining this action. While we affirm Mr. Berry's attorney's fee award, we remand Mr. Reynolds' attorney's fee award for reconsideration in light of this decision.

## VI.

We AFFIRM the district court's decision with respect to defendants' liability for Mr. Reynolds' Title VII retaliation claim. We also AFFIRM the district court's award of attorney's fees to Mr. Berry. We REVERSE the district court's award of compensatory damages to Mr. Reynolds and consequently REMAND his attorney's fees award. On remand, the district court may revisit its decision to dismiss the pendent state law claims.