Carlos SANCHEZ, Plaintiff,

v.

**BOARD OF COUNTY COMMISSIONERS OF EL PASO COUNTY, Defendant.**

Civil Action No. 96–WY–170–CB.

United States District Court, D. Colorado.

Dec. 4, 1996.

Darold W. Killmer, David Arthur Lane, Denver, CO, for Plaintiff.

Robert M. McConnell, Collins & McConnell, and J. Patrick Kelly, El Paso County Attorney's Office, Colorado Springs, CO, for Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND MOTION FOR ATTORNEYS' FEES

BRIMMER, District Judge *.

Defendant Board of County Commissioners of El Paso County (the "County") filed three different motions for summary judgment and a motion for attorneys' fees. Plaintiff Carlos Sanchez ("Sanchez") opposes the motions.[1] After hearing the parties' oral argument and considering the parties' briefs, the Court FINDS and ORDERS as follows:

### Background

Sanchez, a man of Mexican descent, worked for the County from May of 1986 to January of 1994. At his termination, Sanchez was a deputy sheriff. Sanchez claims that during his tenure with the County, he was subjected to a racially hostile work environment and was retaliated against for opposing this alleged conduct.

---

* Sitting in and for the District of Colorado.

1. Sanchez filed a motion to strike the County's second and third motions for summary judgment. Sanchez claims the motions were untimely filed. While the Court agrees with Sanchez that the County's motions should have been consolidated, the Court, nevertheless, denies his motion and will consider all briefs currently before it.

The problems began in December 1990, when Sanchez was accepted as a deputy in the County's training office. Shortly after arriving in the training office, then-Sheriff Bernard Barry began referring to Sanchez, often publicly, as "wetback." For instance, in March 1991, at a graduation ceremony for new deputies, Sheriff Barry introduced Sanchez as his "token wetback." Sanchez complained to his immediate supervisor, Sergeant Paula Reisman, and she relayed the concern up the chain of command. Sheriff Barry continued to refer to Sanchez as "wetback" until October 1992.

In addition to the frequent racial slurs, Sanchez claims he was treated differently than other similarly situated white deputies. Sanchez was disciplined for using profanity while conducting sexual harassment training. He was given a one day suspension when other white deputies routinely used profanity without any discipline. In February 1993, Sanchez was transferred back to detentions, despite the fact that detentions was last on his list of requested positions. At detentions, Sanchez was ordered to remove his cappuccino machine, even though other non-Hispanic deputies were allowed to have a cappuccino machine. In June 1993, Sanchez attended training where profanity was used. After the class, Sanchez requested that the letter reprimanding him for using profanity be removed from his file—the request was denied.

Ultimately, Sanchez claims he resigned because the working conditions at the County became intolerable.

### Standard of Review

The specific standards for summary judgment are well recognized, and need only be briefly restated. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1414 (10th Cir. 1993). The factual record must be examined in the light most favorable to the party opposing summary judgment. *Thomas v. IBM,* 48 F.3d 478, 484 (10th Cir.1995).

### Analysis

The County has filed summary judgment motions moving the Court to dismiss Sanchez's three different Title VII claims: hostile work environment; retaliation; and constructive discharge.

## I. The County's Motions for Summary Judgment

### A. Timing of EEOC Filing

To bring a Title VII action, an employee must file a discrimination charge with the state agency within 300 days after the alleged discriminatory act occurred. 42 U.S.C. § 2000e–5(e). An employee may not maintain a Title VII suit in federal court unless the employee first pursues administrative relief. *Love v. Pullman Co.,* 404 U.S. 522, 523, 92 S.Ct. 616, 617, 30 L.Ed.2d 679 (1972).

There is an exception to this rule for hostile work environment claims. If an employee can show that the hostile work environment claim involves a continuing violation, the action will not fail for failure to exhaust administrative remedies. To invoke this continuing violation exception, the employee must show either (1) a series of related acts taken against the employee, one or more of which falls within the limitations period, or (2) the maintenance of a company policy of discrimination both before and during the limitations period. *Purrington v. University of Utah,* 996 F.2d 1025, 1028 (10th Cir.1993).

### 1. Series of Related Acts

To prove a series of related acts, Sanchez must show a "dogged pattern" of discrimination. *Id. Purrington* looked at three specific inquiries in determining whether the acts were closely related enough to constitute a continuing violation: (1) whether the alleged acts involved the same type of violation; (2) whether the acts were recurring or isolated; and (3) whether the acts had the degree of permanence which should have alerted the employee of the duty to assert his rights. *Id.*

Subtracting three hundred days from the filing of Sanchez's claim on September 10, 1993, the Court arrives at November 15, 1992. The only post-November 15, 1992, acts that Sanchez claims violated Title VII are as follows: First, on December 15, 1992, Sanchez received a one day suspension for providing inaccurate information to a superior. In his deposition, Sanchez claims the real reason Lieutenant Kessler suspended him was that he reported Kessler's personal use of the County carwash. Second, on December 23, 1992, after appealing his suspension, Barry apologized to Sanchez. During the apology, Sanchez claims Barry angrily shook his finger at him and demanded that Sanchez respect him. Third, in February 1993, Sanchez was transferred back to detentions. Sanchez considered this a demotion because it was last on his list of preferred positions (even after remaining in training). Fourth, on February 8, 1993, Sanchez was told to remove his cappuccino machine by the Commander of Detentions. Sanchez claims other non-Hispanic officers were allowed to keep their cappuccino machines. Fifth, in June of 1993, Sanchez's request to remove a letter of reprimand received for using profanity during a sexual harassment training session was denied.[2]

From the outset, the Court notes it has no doubt that the pre-November 1992 actions of Sheriff Barry would create an issue of triable fact as to a hostile work environment, but the issue here is whether the post-November 15 acts constitute a series of related acts enabling the Court to examine all hostile acts against Sanchez throughout his tenure with the County.

Under the *Purrington* framework, the post-November 15 acts do not constitute a continuing violation. The majority of pre-November 15 acts consisted of Sheriff Barry publicly referring to Sanchez as "wetback." None of the post-November 15 acts involved the same type of violation. None of the five post-November 15 acts were the recurring type, they were each isolated incidents. Furthermore, the numerous instances of Sheriff Barry publicly calling Sanchez a "wetback" were both recurring and had a degree of permanence that should have put Sanchez on notice to assert his rights—particularly considering that Sanchez admits he knew of his rights under Title VII prior to suffering any discrimination and that he was represented by counsel by December 1992. *See Purrington*, 996 F.2d at 1028–29; Sanchez Depo. at 207. In sum, the five post-November 15 acts alleged to violate Title VII do not rise to the level of a "dogged pattern" of discrimination. Thus, these five incidents do not constitute a continuing violation.

## 2. County Policy of Discrimination

Sanchez claims the County had a policy of discrimination because no action was taken after he complained. The Court disagrees. By Sanchez's own admission, Barry's offensive conduct was brought to his attention and the references to Sanchez as "wetback" ceased in October 1992. The Court cannot find any other evidence of discrimination. In short, the Court does not find any evidence of a refusal to rectify a discriminatory practice. *See Purrington*, 996 F.2d at 1029.

In conclusion, the Court finds that Sanchez failed to establish a continuing violation of Title VII. There was no evidence of either a series of related discriminatory acts or a County-wide policy of discrimination.[3] Because Sanchez untimely filed his EEOC complaint, none of the pre-November 15 racially hostile acts against him have any legal significance. Sanchez has not shown that any of the post-November 15, 1992, acts were racially motivated. In fact, Sanchez admitted in his deposition that many of them were not. As a result, his hostile environment claim must be dismissed.

## B. Sanchez's Retaliation Claim

In order to establish a prima facie claim for retaliation, Sanchez must show: (1)

---

**2.** Sanchez had been warned not to use profanity during the sexual harassment training because of the sensitive subject matter.

**3.** Neither party addressed the issue of an equitable tolling. Perhaps this is because Tenth Circuit precedent requires a showing that the defendant engaged in "active deception" and that was clearly not the case here. *See Purrington*, 996 F.2d at 1030–31.

that he engaged in protected opposition to Title VII discrimination; (2) that he suffered adverse action by the employer subsequent to or contemporaneous with his activity; and (3) a causal connection between his activity and the adverse action. *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996).

Sanchez engaged in protected activity by filing a claim with the EEOC on September 10, 1993. Prior to his EEOC complaint, Sanchez never filed an formal internal complaint even though he knew the procedure. Sanchez Depo. at 206–07. The only allegedly adverse action that occurred after September 10, 1993, was Lieutenant Johnson not responding when Sanchez greeted her. Sanchez Depo. at 352–54. The Court finds that this alleged act was not disruptive nor did it affect Sanchez's job. *See Cole v. Ruidoso Mun. Schools,* 43 F.3d 1373, 1381–82 (10th Cir.1994). In other words, failing to respond to Sanchez's greeting is not an adverse action under Title VII and therefore, Sanchez has failed to establish a prima facie case of retaliation.

### C. Constructive Discharge

In order to prevail on a claim for constructive discharge, Sanchez must show that the County, by its illegal discriminatory acts, fostered a climate that would compel a reasonable person in Sanchez's positions to resign. *James v. Sears, Roebuck and Co.,* 21 F.3d 989, 992 (10th Cir.1994). An important factor to consider in evaluating a constructive discharge claim is the timeliness of the resignation. *Hogue v. MQS Inspection, Inc.,* 875 F.Supp. 714, 723 (D.Colo.1995).

Sanchez resigned in January of 1994. The last racist remark allegedly occurred in October 1992 and the last action Sanchez claims was adverse took place in February 1993 (the cappuccino machine incident). Sanchez even waited four months after filing his EEOC claim (September 1993) before resigning. If Sanchez had resigned after Barry's racist remarks at the graduation ceremony or at least during the time in which Barry commonly referred to him as "wetback," the Court would agree with Sanchez that his working conditions were intolerable. However, waiting over two years after the

discriminatory comments ceased forces this Court to find that a reasonable person would not have found Sanchez's conditions unbearable at the time he resigned.

### II. The County's Motion for Attorneys' Fees

The County moves for the Court to award it attorneys' fees pursuant to two different Colorado statutes (Colo.Rev.Stat. §§ 13–17–201 (1987) and 24–10–110(5)(a) (Supp.1996)) and Title VII. The Court will examine each in turn.

#### A. § 13–17–201

Outrageous conduct, as a state tort law claim, is subject to Colo.Rev.Stat. § 13–17–201 which states "[i]n all actions ... occasioned by the tort of any other person, where any such action is *dismissed on motion of the defendant* prior to trial under rule 12(b) ... defendant shall have judgment for his reasonable attorney fees...." (emphasis added). Sanchez's fifth right of action (outrageous conduct) was dismissed pursuant to his motion, not the County's. *See* this Court's Order dated April 13, 1996. Accordingly, the County is not entitled to attorney fees under Colo.Rev.Stat. § 13–17–201.

#### B. § 24–10–110(5)(a)

The Tenth Circuit has held that the Colorado Governmental Immunities Act does not extend to federal claims brought in federal court. *Griess v. State of Colo.,* 841 F.2d 1042, 1044–45 (10th Cir.1988). In *Goodwin v. Debekker,* 807 F.Supp. 101, 103 (D.Colo. 1992), the court, citing *Griess,* refused to award attorneys' fees under § 24–10–110 because a federal court is not "a court of this state" within the meaning of Colo.Rev.Stat. § 24–10–119. In the instant action, Sanchez's primary claims were federal Title VII claims; the state tort claim of outrageous conduct claim was peripheral. Accordingly, § 24–10–110 is not applicable.

Even if the Court found that the federal court was "a court of this state," the Court would deny the County's motion because Sanchez never "sought" punitive damages under Colo.Rev.Stat. § 24–10–110(5)(c)

which states: "[i]n any action against a public employee in which exemplary damages are sought ... if the plaintiff does not substantially prevail on his claim ... the court shall award attorney fees...."

Sanchez filed this action on January 26, 1996. Although Sanchez initially asserted a pendent state law claim for outrageous conduct, less than three months later he requested that this Court dismiss the claim. The County did not take any action in the intervening time. Sanchez never pursued his punitive damages claim. Because Sanchez voluntarily dismissed his outrageous conduct claim, the Court finds that exemplary damages were not "sought" within the meaning of Colo.Rev.Stat. § 24–10–110(5)(c).

### C. Title VII

The Court also declines to award attorneys' fees under Title VII. The County has not shown that Sanchez's claims were frivolous or completely without foundation. *See Simons v. Southwest Petro–Chem, Inc.,* 28 F.3d 1029, 1033 (10th Cir.1994). The Court notes that if not for the three hundred day filing requirement for Title VII actions, the people of El Paso County may have been saddled with a sizeable judgment for Sanchez's hostile work environment.

### *Conclusion*

Based on the foregoing, the Court **GRANTS** the County's motions for summary judgment. Also, the Court **DENIES** the County's motion for attorneys' fees. As a result, this action is hereby **DISMISSED WITH PREJUDICE.**