BRISCOE, Circuit Judge,
concurring:
I concur in the result reached by the majority on Zinn’s Title VII retaliation and state law whistleblowing claims, but disagree with the majority’s conclusion that Zinn failed to establish Kansas Department of Corrections (KDOC) could be her employer for purposes of these Title VII and state law claims. Zinn has made a sufficient showing of a dual' employer relationship to survive summary judgment. I would affirm the summary judgment on the Title VII claim on the ground that Zinn failed to establish she engaged in activity protected by Title VII. I would affirm the summary judgment on the whistleblowing claim on the ground that Zinn failed to establish she was fired in retaliation for reporting a serious violation of rules, regulations, or law.
An employer is prohibited from discriminating against an employee for opposing any practice made unlawful by Title VII or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3. The majority concludes Zinn cannot prevail on her retaliation claim because KDOC is not Zinn’s employer. Zinn contends that although Prison Health Services (PHS) was her formal employer, KDOC was also her employer by virtue of the day-to-day control it exercised over her work at the prison clinic.
Because Title VII is a remedial statute, it must be interpreted liberally to effectuate its purpose of eradicating employment discrimination. Berry v. Stevinson Chevrolet, 74 F.3d 980, 985 (10th Cir.1996); see Robinson v. Shell Oil Co., 519 U.S. 337,----, 117 S.Ct. 843, 848-49, 136 L.Ed.2d 808 (1997). In the absence of. clear congressional mandate, courts should avoid interpretations of Title VII that deprive discrimination victims of a remedy. See Berry, 74 F.3d at 988.
42 U.S.C. § 2000e(b) defines “employer” as “a person engaged in an industry affecting commerce who has fifteen or more employees” in a specified period, and § 2000e(f) defines “employee” as “an individual employed by an employer.” “Industry affecting commerce” includes “any governmental industry, business, ór activity.” 42 U.S.C. § 2000e(h). The Supreme Court has broadly construed “employee” as used in § 2000e-3 to include both current and former employees. Robinson, 519 U.S. at-, 117 S.Ct. at 845; Berry, 74 F.3d at 985. The term “employer” under Title VII should also be “construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevei*theless control *1361 some aspect of an individual’s compensation, terms, conditions, or privileges of employment.” See Magnuson v. Peak Technical Services, Inc., 808 F.Supp. 500, 507-08 (E.D.Va.1992).
The general test for determining whether a plaintiff has demonstrated an employer-employee relationship under Title VII is derived from the common law test for a master-servant relationship. See Lambertsen v. Utah Department of Corrections, 79 F.3d 1024, 1029 (10th Cir.1996).
[T]he main focus of the court’s inquiry' is the employer’s right to control the “means and manner” of the worker’s performance. However, the hybrid test also looks at other factors, including: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. No single factor is conclusive. Rather, the courts are to look at the totality of circumstances surrounding the working relationship between the parties.
Id. at 1028 (internal citations omitted).
In determining whether both KDOC and PHS were Zinn’s employers, we must consider related common law doctrines under which a worker may be employed by more than one employer. Generally, a person may be the employee of two employers, “at one time as to one act, if the service to one does not involve abandonment of the service to the other.” Restatement (Second) of Agency § 226 (1958). Title VII case law recognizes that two separate entities may be a worker’s employer if they share or eodetermine matters governing the essential terms and conditions of the worker’s employment. When a worker is formally employed by one organization, but important aspects of his work are subject to control by another organization, both organizations are employers of the worker. An independent entity with sufficient control over the terms and conditions of the employment of a worker formally employed by another is a joint employer within the scope of Title VII. See, e.g., Graves v. Lowery, 117 F.3d 723, 727 (3d Cir.1997); Virgo v. Riviera Beach Assocs., 30 F.3d 1350, 1360 (11th Cir.1994). Here, Zinn’s work at the KDOC facility did not involve abandonment of service to PHS. Her job with PHS was to provide health care services to inmates under KDOC’s charge.
. Similarly, under the loaned servant doctrine, a “servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other’s servant as to some acts and not as to others.” Restatement (Second) of Agency § 227. Title VII case law recognizes that under the loaned servant doctrine, a worker formally employed by a temporary employment agency and assigned to work under the control and supervision of a client of the agency is an employee of both the agency and the client. See Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F.Supp. 344, 349 (S.D.N.Y.1984), aff'd 770 F.2d 157 (2d Cir.1985).
There is evidence in the record that PHS and KDOC split the right to control Zinn’s work. KDOC had the right to control how Zinn performed the security aspects of her job while PHS had the right to control the nursing aspects of her work. Conversely, PHS had no right to control the security aspects and KDOC had no right to control the nursing aspects. Zinn was not just a nurse, but a nurse in charge of a clinic for prison inmates. She was specifically hired for that position. At least one of the people who interviewed her for the job was a KDOC employee. Zinn’s work required her to have very close contact with inmates, often with no one else present, and there were special security concerns because there were sharp instruments and drugs at the clinic. All PHS employees were required to undergo *1362 training by KDOC and to follow KDOC policies and procedures. The contract between KDOC and PHS gave KDOC a means of enforcing control over Zinn by requiring PHS to remove Zinn at KDOC’s request. Employees of contractors, were expressly treated as KDOC employees in KDOC’s manual of internal management policy and procedure. As evidence of that fact, KDOC acted on Zinn’s internal EEO complaint as though she were its employee.
There is evidence in the record that KDOC exercised its right of control over the security aspects of Zinn’s work. In answer to interrogatories, PHS stated Zinn was supervised in delivering health care to inmates by a KDOC employee who reported to a PHS employee. However, KDOC administrator Young “would supervise Ms. Zinn and her management of the medical clinic as it would relate to the interrelationship between managing the medical clinic within the confines of a correctional facility.” App. at 360. Zinn needed permission from Young to leave work early, and Young had directed her to inform him if she worked outside her regular hours. He set the time for her to start sick call, and required her to complete clinic inventories by a certain date each month. He directed her to complete an incident report when an inmate was hurt, and directed her to allow inmates in the clinic only for medical reasons or for work assignments.
I conclude from this evidence that whether KDOC was Zinn’s employer is a question of fact. In Lambertsen, a teacher hired and paid by a school district and assigned to work in a state prison education program brought a Title VII action against the department of corrections after she was sexually assaulted by an inmate. This court concluded the department of corrections was not plaintiffs employer under Title VII.
Although the Department physically controlled plaintiffs entry into the Correctional Facility and provided security for plaintiff ..., the uncontroverted evidence indicates thát plaintiffs employer was the School District. Most notably, there is simply no evidence in the record from which a finder of fact could conclude the Department controlled the means or the manner in which plaintiff performed her day-to-day work. Rather, the • uncontro-verted evidence makes clear that the major terms of plaintiffs employment (e.g., work assignments, pay, etc.) were controlled solely by the School District.
79 F.3d at 1028-29 (emphasis added). Here, however, there was evidence in the record that KDOC controlled the means and manner in which Zinn performed her work as the nurse in charge of a prison clinic.
Recognition that the control exercised by KDOC over Zinn’s work could make KDOC her employer is consistent with Title VU’s remedial purpose of eradicating employment discrimination. An ’ organization whose employees are in a position to discriminate against a worker who is performing work under that organization’s control should be recognized as that worker’s employer under Title VII, whether or not the organization is the worker’s formal employer. In a case like this one where a worker’s formal employer assigned her to work for a separate organization, employees of both the formal employer and the separate organization are in a position to discriminate against the worker with respect to her employment.
Although Zinn presented evidence that KDOC was her employer, she did not present evidence supporting her retaliation claim. To establish a prima facie case of retaliation, she must prove (1) she engaged in protected opposition to discrimination; (2) adverse action by the employer subsequent to the protected activity; and (3) a causal connection between the employer’s activity and the adverse action. Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir.1993). Zinn contended KDOC retaliated against her after she filed an internal EEO complaint with KDOC. However, she failed to establish this complaint was protected activity. Although the complaint that triggers the retaliation need not ultimately be upheld, see Archuleta v. Colorado Dept. of Institutions, 936 F.2d 483, 487 (10th Cir.1991), the plaintiff must have had a reasonable good faith belief that defendant was engaging in discrimination. E.g., Dey v. Colt Constr. & Development Co., 28 F.3d 1446, 1457 (7th Cir.1994); Rettiger v. IBP, Inc., 980 F.Supp. 1182, 1190 (D.Kan.1997).
*1363 Zinn failed to establish that her EEO complaint alleged discrimination forbidden by Title VII. In her complaint, she did not expressly allege any discrimination on the basis of sex. She characterized her complaint as one for retaliation, but did not specify the retaliation was for complaining or opposing discrimination prohibited by Title VII. She reported incidents of “harassment” by KDOC employees, but did not complain that the harassment was sexual or was otherwise discriminatory. Most of the incidents reported were personality clashes or disagreements over prison policies. Nor did she report the harassment was in retaliation for prior opposition or complaints about discrimination. Only one of the reported incidents, the spreading of a rumor of a sexual relationship with an inmate, could be characterized as sexual harassment. However, that alone could not create a sexually hostile work environment and, in any case, sexual harassment was not the basis for her complaint. Because she could not have had a reasonable good faith belief that she was reporting retal-, iation or discrimination prohibited by Title VII, she did not establish that she engaged in protected activity by filing the internal EEO complaint with KDOC.
Zinn also raised a state law claim that KDOC caused her employment discharge in retaliation for reporting misuse of state property by a KDOC administrator. The district court rejected this whistleblower claim, ruling KDOC was not Zinn’s employer under state law. Kansas law recognizes that under Restatement (Second) of Agency §§ 226 and 227 an employee may be simultaneously employed by more than one employer. Bright v. Cargill, Inc., 251 Kan. 387, 837 P.2d 348, 362-63 (1992). The evidence that KDOC could be Zinn’s employer under Title VII is also sufficient to support her state law retaliatory discharge claim on summary judgment. KDOC had the right to control security aspects of Zinn’s work and exercised that control. Although KDOC did not have the right to discharge Zinn from her employment with PHS, it did have the right to demand her reassignment and it exercised control over how she performed her job. However, summary judgment was appropriate because to establish a whistleblowing claim, a plaintiff must prove, among other things, that he or she reported “a serious infraction” of rules, regulations, or law pertaining to public health, safety, and general welfare by coworkers to company management or law enforcement officials. See Palmer v. Brown, 242 Kan. 893, 752 P.2d 685, 689-90 (1988). Zinn reported that KDOC administrator Young allowed a departing employee to take state property — a bulletin board made by an inmate from state owned materials which had been personalized for the employee. This is not the kind of serious infraction recognized in Palmer as a basis for a whistleblowing claim.
I would conclude Zinn was an employee of both PHS and KDOC for purposes of Title VII and related state law claims. I concur in affirming the district court’s grant of summary judgment as Zinn’s claims fail on their merits.