HOLLOWAY, Circuit Judge.
This is an appeal from a judgment as a matter of law for the defendants-appellees in an employment discrimination case after the jury had returned a verdict for the plaintiff. The district court so held on the ground that an “adverse employment action,” under Title VII, may be only those employment actions that result in “tangible harm” to the plaintiff. We disagree and, for the reasons detailed below, hold that a plaintiff need only show a likely effect on future job opportunities.
Plaintiff also appeals, in the alternative, an evidentiary ruling, jury instruction, and an interrogatory on the special verdict form. Since we reverse the judgment as a matter of law and remand for entry of judgment on the jury’s verdict, we need not address these claims of error.
I
A
By March of 1998, Plaintiff-Appellant Terrie Hillig (Hillig) had been employed by the Defense Finance Accounting Service (DFAS) in a clerical position for five years. During her employment with DFAS, Hillig, who is African-American, filed two discrimination complaints, in 1995 and 1996, with the EEO alleging that her “lead,” Susan Armer (Armer) and Kathy Reusch (Reusch), her supervisors, had discriminated against her in connection with her approval ratings in 1995, her 1995 request for annual leave (for which approval was delayed while Caucasian and male employees got prompt approvals), and job training. I Plaintiff-Appellant’s Appendix at 71-74.
These complaints were settled in December of 1996. Id. at Í89-91. The terms of the settlement provided that DFAS would upgrade Hillig’s performance appraisal, expunge negative information from her personnel file, and retroactively promote her. Id.
In March of 1998, Hillig applied for a position as a Personnel Clerk/Assistant with the Department of Justice (DOJ). Id. at 76-77. Hillig .testified that at her interview for this position, her interviewer, William Wooden (Wooden), commented that she would be a perfect fit for the position. Id. at 79. Hillig further testified that Marilyn Ferguson, a personnel officer at the DOJ, made similar positive comments. Id. at 80. Hillig, however, did not receive the position, which was eventually filled by Sandra Dye (Dye), a Caucasian with no prior EEO activity. Id. at 48.
Hillig claims she did not receive this position because of negative recommenda *1030 tions from her supervisors at DFAS. An EEO investigation revealed that the DOJ was provided two negative evaluations of Hillig by her supervisors at DFAS, with one supervisor giving “very strong negative feedback.” Id. at 165. One of her supervisors, Reusch, who had been the subject of Hillig’s EEO complaint, testified that she had told a DOJ representative that Hillig had performance problems at work. Id. at 143-44. Reusch also admitted characterizing Hillig as a “shitty employee” to Samilton, an EEO investigator with DFAS. Id. at 146. According to Wooden, such negative information would have disqualified a candidate for the DOJ job. Id. at 106.
Nonetheless, Wooden claims that the negative information provided by Hillig’s supervisors did not cause his decision to hire Dye over Hillig. Id. Rather, Wooden testified that he disqualified Hillig because of her long fingernails which, in his experience, would have adversely affected Hil-lig’s typing speed. Id. at 107-08. Hillig, however, disputes this reason and testified that her fingernails had always been short. Id. at 85.
B
Based upon these events, Hillig filed suit against the DFAS alleging three causes of action: (1) racial discrimination; (2) retaliation for her EEO complaints; and (3) violation of her settlement agreement with DFAS. The district court granted DFAS summary judgment on Hillig’s claim of breach of her settlement agreement but allowed the other two claims to go to trial. In a special verdict form, the jury found that Hillig’s negative references were not motivated by racial discrimination but that they were made in retaliation for her EEO complaints. Id. at 259-60. The jury also found that Hillig had not proved by a preponderance of the evidence that but for the unlawful retaliation in March, 1998, Wooden would have offered her the personnel clerk position with the office of the United States Attorney. Id. at 260. Nonetheless, the jury awarded Hillig $ 25,-000 as the amount that would fairly compensate her for DFAS’s illegal retaliation. Id.
On basis of the jury verdict, the district court granted DFAS judgment as a matter of law on Hillig’s retaliation claim. The district court so held on the ground that Hillig failed to establish that she suffered an “adverse employment action,” which is part of a prima facie case of retaliation under Title VII, because she failed to show that she suffered an “actual tangible injury.” Specifically, the district court held that Hillig’s failure to show she would have received the DOJ job but for the negative references was fatal to her claim. Accordingly, the court entered judgment for DFAS.
Hillig now appeals, claiming that the district court erred in construing an “adverse employment action” as requiring a showing of a loss of a specific job. Hillig also claims errors, in the alternative, in several trial errors: that the district judge improperly rejected an offer of a photo as evidence, he failed to include necessary jury instructions, and he improperly included an interrogatory on the special verdict form. The National Employment Lawyer’s Association, in an amicus curiae brief, also argues the district court erred. In particular, they contend that the remedial goals underlying Title VII’s anti-retaliation provisions could not be achieved if individuals were required to show loss of a specific job.
For the reasons detailed below, we hold that the district judge erred in requiring Hillig to show that she would have received the DOJ position but for the negative references. Accordingly, we reverse *1031 the judgment as a matter of law on this retaliation claim, we reinstate the jury verdict for $25,000 in Hillig’s favor; and we find that we need not address the alleged trial errors.
II
The adverse employment action issue
One element of a prima facie case under Title VII is that the plaintiff suffered an “adverse employment action.” Sanchez v. Denver Public Schools, 164 F.3d 527, 531 (10th Cir.1998). We “liberally define[ ] the phrase ‘adverse employment action’.... Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand.” Id. (citations and quotation marks omitted). One factor that strongly indicates a challenged action is an “adverse employment action” is that the action causes “harm to future employment prospects.” Berry v. Stevinson Chevrolet, 74 F.3d 980, 986-87 (10th Cir.1996). Nonetheless, “a mere inconvenience or an alteration of job responsibilities,” is not an adverse employment action. Id.
Here the district court held that Hillig had not established that she suffered “an actual tangible injury” as a result of the negative references she received. This theory of failure of proof, the district judge concluded, dictated judgment as a matter of law for DFAS in light of the Supreme Court’s decision in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), which defined a “tangible employment action” as one entailing “a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.” Id. at 761, 118 S.Ct. 2257. The judge here so held even though Ellerth involved employer liability for sexual harassment under Title VII, id., because, in his view, the Tenth Circuit had adopted Ellerth’s definition for all retaliation claims.[1] We disagree.
As the district judge noted, Ellerth did not purport to define the term “adverse employment action” for all employment discrimination claims. Id. at 746-47, 118 S.Ct. 2257. Rather, the issue in Ellerth was the scope of an employer’s liability for sexual harassment where the employer was not shown to be at fault. Id. As would be expected, the Court’s analysis was concerned with agency principles, id. at 755, 118 S.Ct. 2257, and the opinion explicitly noted that the “tangible employment action” definition adopted therein was “for resolution of the vicarious liability issue ...,” id. at 761, 118 S.Ct. 2257. Accordingly, the Court held that proof of an adverse “tangible employment action” was relevant insofar as it would preclude an affirmative defense by an employer that the employee unreasonably failed to avoid *1032 or reduce the harm suffered. Id. at 765-66, 118 S.Ct. 2257; Faragher v. City of Boca Raton, 524 U.S. 775, 805, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (decided the same day as Ellerth and holding “When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... ”). Moreover, the Court made clear in Faragher, that although Title VII “mentions specific employment decisions with immediate consequences, the scope of the prohibition is not limited to economic or tangible discrimination ...524 U.S. at 786, 118 S.Ct. 2275 (emphasis added).
The limited scope of the decisions in Ellerth and Faragher was made even more clear in Pennsylvania State Police v. Suders, — U.S.-, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004). There, the Court described Ellerth and Faragher as delineating two categories of cases where an employee claims the “adverse employment action” was a hostile work environment: “(1) harassment that culminates in a tangible employment action, for which employers are strictly liable, and (2) harassment that takes place in the absence of a tangible employment action, to which employers may assert an affirmative defense.” Id. at 2353. (quotation marks and citations omitted) (emphasis added). Moreover, the Court specifically allowed plaintiffs who allege hostile work environment claims to proceed, subject to the employer’s affirmative defense, even where they “allege[ ] no tangible employment action.” Id. at 2357. Thus the Court did not require a showing of a “tangible employment action” as part of a prima facie case under Title VII in either Ellerth or Faragher.
Nor have our decisions imported this “tangible employment action” definition into all Title VII claims. The longstanding rule in our circuit has been to “liberally define[] the phrase adverse employment action” and not limit the term to simply “monetary losses in the form of wages or benefits.” Sanchez, 164 F.3d at 532 (citing Berry v. Stevinson Chevrolet, 74 F.3d at 986-87). A major underpinning of this rule has been the “remedial nature of Title VII,” reasoning that a liberal definition of Title VII is necessary to best carry out its anti-discrimination and anti-retaliation purpose. Berry, 74 F.3d at 986-87.
To that end in Berry we held that the filing of false criminal charges constituted an “adverse employment action” because such an act causes “harm to future employment prospects.” Id. There the plaintiff pointed out that false “criminal charges of theft and forgery” constituted an “unlawful employment practice” giving rise to potential Title VII liability. Id. at 984. We agreed, even though the plaintiff had not shown a specific job that he did not receive because of the filing of charges and held that “the filing of charges against a former employee may constitute adverse action.” Id. at 984-85. Thus, in Berry, we defined an “adverse employment action” as not limited to those situations where a plaintiff can show loss of an actual job, but also as encompassing those acts that carry a “significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.” Id. at 986 (emphasis added).
In our decisions since Ellerth and Far-agher, we have not abandoned the definition we used in Berry.[2] While we have cited Ellerth for the proposition that an “adverse employment action” includes those acts that “constitute[ ] a significant change in employment status, such as hir *1033 ing, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,” we have not held that the term “adverse employment action” is limited to such acts. Rather, we have continued to liberally define the term “adverse employment action” and take a case-by-case approach. See, e.g., Stinnett v. Safeway, 337 F.3d 1213, 1217 (10th Cir.2003); Garcia v. Pueblo Country Club, 299 F.3d 1233, 1241 (10th Cir.2002); Sanchez, 164 F.3d at 532 (decided 12/31/1998 and citing Berry v. Stevinson Chevrolet, 74 F.3d at 986-87).
Even though we do not require the plaintiff to show the loss of a specific job, we do not define “adverse employment action” as encompassing every “action taken by a plaintiffs employer ... that may affect the plaintiffs future employment opportunities .... ” Aquilino v. Univ. of Kan., 268 F.3d 930, 935 (10th Cir.2001). We exclude from that definition those acts that merely have a de minimis impact upon an employee’s future job opportunities. Id. at 934. In Aquilino, we found just such a de minimis effect and, therefore, a non-materially adverse act. There, the plaintiff was an assistant professor who claimed that her removal from a dissertation committee constituted an “adverse employment action.” Id. The plaintiff, however, had been denied tenure for legitimate reasons and “removal from the [dissertation] committee is a normal incident of the denial of tenure.” Id. Accordingly, we reasoned that the plaintiffs removal from the dissertation committee did not adversely affect her prospects for future employment. Id.
Similarly, we found another de minimis impact in Tran v. Trustees of the State Colleges in Colorado, 355 F.3d 1263 (10th Cir.2004). There, the plaintiff asserted a claim of retaliation under Title VII premised upon two reassignments. Id. at 1267. These reassignments, however, involved no hardship to the plaintiff other than a requirement to develop new skills. Id. at 1268. The district court applied the “tangible employment action” standard from Ellerth in granting the defendants summary judgment. Id. at 1267. While we did not disapprove of the district court’s use of this standard, we did not affirm on that ground. Instead, we observed that the reassignments were not “adverse” and, therefore, could not be considered an “adverse employment action.” Id. at 1268. Moreover, we acknowledged that our precedents require us to define “adverse employment action” “more liberally under a case-by-case approach” rather than applying the definition of a “tangible employment action.” Id. at 1267.
Therefore, an act by an employer that does more than de minimis harm, Aquilino, 268 F.3d at 934, to a plaintiffs future employment prospects can, when fully considering “the unique factors relevant to the situation at hand,” be regarded as an “adverse employment action,” even where plaintiff does not show the act precluded a particular employment prospect, Berry, 74 F.3d at 986-87. Accordingly, while we require that the “employer’s conduct [ ] be materially adverse to the employee’s job status,” Wells v. Colorado Dept. of Transportation, 325 F.3d 1205, 1213 (10th Cir.2003) (emphasis added), we allow a plaintiff to show materiality other than by showing a tangible employment action, Jeffries v. Kansas, 147 F.3d 1220, 1232 (10th Cir.1998) (rejecting application of a Seventh Circuit case, Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir.1996), requiring the plaintiff to show a “change in the terms and conditions of employment [and] more disruptive than a mere inconvenience or an alteration of job responsibilities”).
*1034 Moreover, our holding today does not venture into uncharted territory. In addition to being the logical result of our precedents, our decision today is in harmony with views of the Ninth, and the District of Columbia Circuits. The Ninth Circuit was confronted with a case similar to Hillig’s in Hashimoto v. Dalton, 118 F.3d 671 (9th Cir.1997). There, the plaintiff alleged she received a negative job reference for a job with the Army from the defendant in retaliation for her EEO activities. Id. at 673. The district court found as a matter of fact that the Army would not have hired the plaintiff even in the absence of the negative recommendation. Id. at 675. Nonetheless, the district court awarded plaintiff attorneys fees and costs. Id. The defendants appealed, arguing that the plaintiff needed to show a job she would have received but for the negative reference. Id. at 674. The Ninth Circuit rejected this argument, holding that the negative job reference was itself the “adverse employment action.” Id. at 675. The court also noted the fact that “this unlawful personnel action turned out to be inconsequential goes to the issue of damages, not liability.” Id. at 676.
The District of Columbia Circuit reached a similar conclusion in Smith v. Secretary of the Navy, 659 F.2d 1113 (D.C.Cir.1980). There, the plaintiff alleged he did not receive a promotion because of negative job-performance evaluations given for discriminatory reasons. Id. at 1114. The district court found that the plaintiff was discriminated against but nonetheless declined to recognize him as the prevailing party entitled to attorneys fees because the plaintiff had not shown he would have received the promotion but for the negative evaluations. Id. at 1118. The court of appeals reversed, noting that an “illegal act of discrimination [ ] is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of back pay or preferential hiring.” Id. at 1120. The court also observed that “[a]n unfavorable employee assessment, placed in a personnel file to be reviewed in connection with future decisions concerning pay and promotion, could both prejudice the employee’s superiors and materially diminish his chances for advancement.” Id.
The Third Circuit’s decision in Wilson v. L.B. Foster, 123 F.3d 746 (3rd Cir.1997) also supports our conclusion. There, the EEOC alleged an employee had not received a job reference from the defendant, as had other employees, in retaliation for her EEO activity. Id. at 753. The district court found for the defendant on the basis that the plaintiff had not shown a particular job she would have received but for the absence of a job reference. Id. Although that court cited approvingly an Eleventh Circuit decision holding that proof of the loss of a particular job is necessary where an employee sues a former employer for damages resulting from a negative reference, it nonetheless reversed the district court. Id. at 754 n. 4 (citing Sherman v. Burke Contracting, Inc., 891 F.2d 1527 (11th Cir.1990)). In so holding, the Third Circuit explicitly held that “[a]n employer who retaliates can not escape liability merely because the retaliation falls short of its intended result.” Id. at 754. That court went on to comment that the district court “improperly focused on the action of the prospective employer and not [that of the defendant] in determining whether [there was] an adverse employment action.” Id. at 753-54.
We are mindful that the Second Circuit has held that even though a negative reference can be an “adverse employment action,” proof that the negative reference “caused or contributed to the rejection by the prospective employer” is part of a pri-ma facie case of discrimination under the Americans with Disabilities Act. Sarno v. *1035 Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2nd Cir.1999). Similarly, the Eleventh Circuit upheld a district court’s ruling that a plaintiff had not established a prima facie case of discrimination under Title VII where he had not shown he would have received a job but for the negative reference. Bailey v. USX Corp., 850 F.2d 1506, 1508 (11th Cir.1988). These holdings, however, are inconsistent with our own precedents which require us to “liberally construe” the term “adverse employment action,” and to take “a case-by-case approach, examining the unique factors relevant to the situation at hand.” Sanchez, 164 F.3d at 532.
In this case, we are satisfied the record contains sufficient evidence to support the conclusion Hilling had suffered more than de minimis harm to her future employment prospects with the United States Attorney’s Office. Specifically, there was evidence showing the negative references were very unfavorable. Id. at 146 (Reusch’s testimony that she had said Hillig was a “shitty employee”). Moreover, Wooden, the hiring authority at the DOJ, testified that applicants with negative job references would not be hired over applicants without such references. Id. at 106. Thus, Hillig has shown that her negative references seriously harm her ability to obtain employment at the DOJ in the future. In other words, Hillig has shown that the negative references carried a “significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.” Berry, 74 F.3d at 986.
That the negative references in this case were oral is irrelevant. The negative references Hillig received were communicated to the DOJ, a potential employer, and would likely preclude her from obtaining employment there in the future. Id. Thus, Hillig has made her required showing of harm to her future employment prospects with the DOJ. The extent of the harm to her future employment prospects, i.e., whether her employment prospects with all potential employers were harmed, affects the “issue of damages, not liability.” Hashimoto, 118 F.3d at 676.
Consequently, Hillig has shown she suffered an “adverse employment action” and the judgment against her as a matter of law and for DFAS on her Title VII retaliation claim was inappropriate. As there is no issue raised concerning the sufficiency of the evidence to support the damages awarded by the jury of $25,000, that verdict should not have been rejected.
III

Additional claims of error

In addition to arguing that the district court erred in its interpretation of what constitutes an “adverse employment action,” Hillig also alleges three trial errors: the exclusion of a photograph from introduction in evidence, the failure to provide a jury instruction, and the inclusion of one interrogatory on the special verdict form. Hillig’s assertion of these trial errors, however, was made as an alternative argument for a new trial to be considered only if we were to find the district court did not err in requiring her to show she would have received the job at the DOJ but for the negative references. Plaintiff-Appellant’s Corrected Opening Brief at 38. Since we have held that so requiring as a basis for judgment against Hillig as a matter of law on her retaliation claim was error, we do not address the additional alleged trial errors.
IV

Conclusion

We hold that the district court erred in requiring Ms. Hillig to prove she would *1036 have received the DOJ job but for her negative recommendations. It is uncontested that her evidence was sufficient to support the verdict for damages. Accordingly the judgment as a matter of law against Ms. Hillig is reversed and the cause is remanded with directions to enter judgment on the jury’s verdict for Ms. Hillig.
IT IS SO ORDERED.

. In. reaching this conclusion, the district court relied upon our unpublished decision in Watson v. Norton, 10 Fed.Appx. 669, 678 (10th Cir.2001). We, however, find this case unconvincing for two reasons. First, unpublished orders and judgments of this court are not binding precedent except under law of the case, res judicata, and collateral estoppel. 10th Cir. R. 36.3(a).
Second, in Watson, we cited Ellerth for the definition of "tangible employment action,” but did not equate "adverse employment action” to "tangible employment action.” Instead, we reiterated our longstanding rule that we liberally define adverse employment action and do not limit that term to "monetary losses in the form of wages or benefits,” and “take a case-by-case approach.” 10 Fed. Appx. at 678 (citing Sanchez, 164 F.3d at 532) (quotation marks and citations omitted).
Accordingly, Watson did not alter the law of our circuit.

. Ellerth and Faragher were both decided on June 26, 1998, and Sanchez v. Denver Public Schools was decided on December 31, 1998, by this court.