**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

L. JOYCE FIERRO,

      Plaintiff-Appellant,

  v.

GALE NORTON, Secretary, United
States Department of Interior,

      Defendant-Appellee.

No. 05-2012
(D.C. No. CIV-03-102 BB/LAM)
(D. N.M.)

**ORDER AND JUDGMENT** *

Before **KELLY, McKAY** , and **McCONNELL** , Circuit Judges.

      After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff/appellant L. Joyce Fierro appeals from summary judgment granted in favor of defendant/appellee Secretary of the Department of the Interior on her claim for retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c). Our jurisdiction arises under 28 U.S.C. § 1291. Because Ms. Fierro failed to show that she suffered an adverse employment action as defined in the Act, we affirm.

## I. Standard of review

Our standard of review is well established.

> We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

> Although the movant must show the absence of a genuine issue of material fact, he or she need not negate the nonmovant's claim. Once the movant carries this burden, the nonmovant cannot rest upon his or her pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof. The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant.

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999) (quotation marks, citations, and brackets

omitted).  "For purposes of summary judgment, 'facts' must be established by evidence which would be admissible at trial."  *BancOklahoma Mortgage Corp. v. Capital Title Co.,* 194 F.3d 1089, 1101 (10th Cir. 1999).  "Like other evidentiary rulings, we review a district court's decision to exclude evidence at the summary judgment stage for abuse of discretion."  *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.* , 131 F.3d 874, 894 (10th Cir. 1997);  *see also Lujan v. Nat'l Wildlife Fed'n,*  497 U.S. 871, 894-98 (1990) (concluding that district court did not abuse its discretion in declining to admit affidavits on summary judgment);  *cf. Durflinger  v. Artiles* , 727 F.2d 888, 890 (10th Cir. 1984) (noting that decisions regarding the competence of witnesses are within the broad discretion of the trial court and, therefore, are reviewed for abuse of discretion).

## II.  Undisputed facts

In 1997 Ms. Fierro began working as the program coordinator for international programs and grants for the Bureau of Land Management (BLM) in New Mexico.  The job was classified as a GS-12 under the general schedule pay scale for federal government employees.  Between 1999 and 2001, Ms. Fierro sought an upgrade in her classification to GS-13, asserting that she "was being asked . . . to add additional grants work to her position."  Aplt. App. at 104.  She stated that her job, as performed, consisted 75% of international programs activity and 25% grant work.  It is undisputed that, during this time period, Ms. Fierro's

supervisors, including the State Director, told her to place more emphasis on grant activities. In the spring of 2001, Carsten Goff (Ms. Fierro's direct supervisor) asked Ms. Fierro to "redraft her position description to reflect a greater emphasis on grants" and to show a 50/50 split between the two activities. Aplt. App. at 3. In April 2001, Mr. Goff told Ms. Fierro "to plan on de-emphasizing the international program by 65% by the end of the fiscal year." *Id.* Instead of following Mr. Goff's re-draft directive, Ms. Fierro complained to the State Director, who allegedly told her in August 2001 that she could rewrite her position description in her reclassification request the way she thought it should be rather than the way Mr. Goff had directed her to write it. In September 2001, Ms. Fierro drafted a position description that reflected 75% international-program work and 25% grant work and again requested a reclassification.

In response, Mr. Goff distributed this draft position description to the BLM's New Mexico field office managers for feedback on the balance between international work and grant work, explaining that, even though it was not standard practice to do so, he wanted to make sure that the field offices were getting what they needed. Unhappy with this distribution, Ms. Fierro filed her first complaint alleging discrimination with the EEOC.

Most of the field-office feedback indicated either that the international-program activity was of no value or needed to be decreased, or suggested that an

-4-

appropriate blend of work would be 75% grant and 25% international activities. The State Director met with Mr. Goff and Ms. Fierro in September 2001 and told Ms. Fierro that she should place more emphasis on assisting the field offices with obtaining grants.

When no formal action on her request for reclassification to GS-13 had been taken by July 2002, Ms. Fierro asked a BLM human-resources employee for help. She subsequently sent the reclassification description she had prepared, which described her position as having 75% international and 25% grant activity work, to Mr. Kurkowski, a BLM human-resources reclassification specialist in Idaho. The retaliation that Ms. Fierro complains of is that, when Mr. Goff discovered what she had done, he cancelled the position-reclassification process she had set up with Mr. Kurkowski. Mr. Goff then conducted a "desk audit" himself, redrafting the position description to call for 75% grant and 25% international activities. He sent this position description to both the New Mexico BLM personnel office and to Mr. Kurkowski for classification review. Both determined that a GS-12 classification was appropriate. Ms. Fierro filed a second EEOC complaint for retaliation, complaining that she had been improperly denied a reclassification to GS-13 by Mr. Goff's interference and that Mr. Goff had been excluding her from meetings. She later also complained that Mr. Goff was demeaning about an award she had been given.

The district court granted summary judgment after determining that Ms. Fierro (1) had waived certain claims by failing to exhaust administrative remedies; (2) could not show a genuine issue of material fact as to whether she suffered an adverse employment action; and (3) had not shown a causal connection between any of the acts and her protected activity. Ms. Fierro appeals.

## III. Analysis

Ms. Fierro appeals only from the grant of summary judgment on her retaliation claim associated with Mr. Goff's cancellation of the reclassification review by Mr. Kurkowski. A prima facie case of retaliation under Title VII requires proof that (1) an employee engaged in protected activity; (2) the employer subsequently subjected her to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000). As the district court noted, to be actionable, retaliation must result in an alteration of an employee's "'compensation, terms, conditions, or privileges of employment' or adversely affect her status as an employee." Aplt. App. at 20 (quoting *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998)) (further quotation marks omitted). Ms. Fierro points to no changes in her employment status as a result of the cancellation of Mr. Kurkowski's reclassification review.

But Ms. Fierro urges application of *Hillig v. Rumsfeld*, 381 F.3d 1028 (10th Cir. 2004), where we held that harm to future employment prospects, if it is more than *de minimis* and is "*materially* adverse to the employee's job status," may also be considered as an adverse employment action. *Id.* at 1033 (quotation marks omitted). She argues that Mr. Goff's cancellation of the review by Mr. Kurkowski and his change of the percentages of work activity in the work description "derailed" her efforts to have her job reclassified at a higher level, which she claims ultimately will prevent her from obtaining higher-level federal jobs. Aplt. Br. at 13.

As support for this claim, Ms. Fierro asserts that, had Mr. Kurkowski evaluated her position description as she had written it (75% international-development work and 25% grant work), he would have reclassified her position as a GS-13 because, in Ms. Fierro's opinion, grant-writing "is generally done by lesser grade employees." *Id.* But the district court specifically found Ms. Fierro's testimony about reclassification to be "unskilled speculation" that was not admissible evidence. Aplt. App. at 16; *and see Simms,* 165 F.3d at 1329 (noting that an employee's opinion about her own qualifications does not give rise to a material factual dispute that will defeat summary judgment); *Rice v. United States,* 166 F.3d 1088, 1092 (10th Cir. 1999) ("To support a jury verdict, evidence, including testimony, must be based on more than mere speculation,

conjecture, or surmise."). The district court noted that Ms. Fierro had deposed Mr. Kurkowski and another witness with substantial classification expertise, but did not offer any other evidence on the point.

Ms. Fierro claims that the district court's conclusion that she was incompetent to testify about classification standards is an improper credibility decision. We disagree. The district court did not question Ms. Fierro's credibility; the court questioned her competence as a witness to testify about a specialized personnel issue. Federal Rule of Civil Procedure 56(e) requires that "[s]upporting and opposing   affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "The trial judge's determination of [competence to testify] is ordinarily conclusive and should not be disturbed except in extreme cases where he has clearly erred or where it is manifest that there has been an abuse of discretion." *Riley v. Layton*, 329 F.2d 53, 56 (10th Cir. 1964).   Ms. Fierro did not show that she has training or expertise in federal job classification and made no effort to substantiate her opinion that her job, as she claimed she performed it, should have been classified as a GS-13. *See Phillips v. Calhoun,* 956 F.2d 949, 951 n.3 (10th Cir. 1992) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings."). The district court did not abuse its discretion in

concluding that Ms. Fierro was not competent to testify about specialized federal classification standards.

In her reply brief, Ms. Fierro focuses on her assertion that the adverse employment action was "denying her the opportunity to be compensated for the work she had been performing in the several previous years." Aplt. Reply Br. at 5. But Ms. Fierro's assertion is inconsistent with her own testimony. Her job as the international program coordinator was originally classified as a GS-12, and she did not question that classification or compensation. *See* Aplt. App. at 2. Ms. Fierro states that she requested the reclassification in 1999 because she was asked to add grant work to her job description, which she "began to do immediately." Aplt. App. at 76, 104. But she also asserts that grant work is "generally done by lesser grade employees." Aplt. Br. at 13. No reasonable jury could conclude that adding lesser-grade work to a GS-12 job description should result in a higher job classification and more pay. Ms. Fierro presented no evidence that she was not properly compensated for the international or grant

work she performed as a GS-12. The district court properly concluded that no admissible evidence supported a finding of an adverse employment action.

The judgment of the district court is AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge