**F I L E D**

UNITED STATES COURT OF APPEALS

**October 25, 2005**

TENTH CIRCUIT

JOHN COUTURE,

        Plaintiff - Appellant,

  v.

BELLE BONFILS MEMORIAL BLOOD
CENTER,

        Defendant - Appellee.

------------------------------------------

AMERICAN CIVIL LIBERTIES UNION;
AMERICAN CIVIL LIBERTIES UNION
OF COLORADO; AIDS ALLIANCE FOR
CHILDREN, YOUTH AND FAMILIES;
ASSOCIATION OF NURSES IN AIDS
CARE; BOULDER COUNTY AIDS
PROJECT; NORTHERN COLORADO
AIDS PROJECT; WHITMAN-WALKER
CLINIC; AMERICAN ACADEMY OF
HIV MEDICINE; INTERNATIONAL
ASSOCIATION OF PHYSICIANS IN
AIDS CARE; NATIONAL ASSOCIATION
OF PEOPLE WITH AIDS; WESTERN
COLORADO AIDS PROJECT; WOMEN'S
LIGHTHOUSE PROJECT; TRAINING
AND ADVOCACY SUPPORT CENTER;
NATIONAL EMPLOYMENT LAWYERS
ASSOCIATION; COLORADO CROSS
DISABILITY COALITION; CENTER'S
LEGAL INITIATIVES PROJECT;
AMERICAN ASSOCIATION OF PEOPLE
WITH DISABILITIES; and AMERICA'S
BLOOD CENTERS

        Amici Curiae.

No. 04-1397

(D. Colorado)

(D.C. No. 02-RB-2319 (OES))

Before **BRISCOE** , **ANDERSON** , and **O'BRIEN** , Circuit Judges.

John Couture appeals the district court's order denying his motion for partial summary judgment and granting defendant Bonfils Memorial Blood Center's motion for summary judgment.  That order disposed of all of Couture's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-213, and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-402, as well as his Colorado common law claims of promissory estoppel and outrageous conduct.  [1]  We affirm.

## BACKGROUND

Bonfils is a nonprofit corporation and Colorado's only community blood center.  In July 2001, Couture learned that Bonfils had openings for

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]Couture does not argue on appeal that the district court erred in granting summary judgment to Bonfils on his common law claims.  We accordingly conclude he has waived any argument concerning those claims.

phlebotomists, individuals who draw blood from blood donors. Although he had no experience in the medical field, Couture submitted an application to become a donor technician, an individual whose primary duty was to perform all aspects of phlebotomy on donors wishing to give blood to Bonfils. [2]

Bonfils hired Couture. On his first day of work, August 6, 2001, Couture filled out a "Post Employment Employee Profile" on which he responded "no" to the question of whether he was "disabled." After completing the orientation session for all new Bonfils employees, Couture embarked on phlebotomy training with all other newly hired donor technicians.

On August 20, 2001, as Couture and his fellow trainees were preparing to practice drawing blood from each other, Couture told Dwayne Chavez, Bonfils' Collections Trainer, that he was HIV-positive. With Couture's permission, Chavez informed Karen McBreen, the Director of Community Donor Operations, and Anne Rooney McCord, the Vice President of Human Resources, of Couture's status.

Over the next three days, McCord met several times privately with Couture and consulted with Bonfils' Medical Director, Dr. William Dickey. Dr. Dickey

---

[2]Bonfils summarizes the duties of a donor technician as follows: "register, interview, screen and select potential donors; perform sample and whole blood collections; provide donor care; and conduct equipment quality control while delivering excellent customer service and adhering to company standards." Appellant's App. at 368.

determined that Couture could no longer continue his phlebotomy training because he was HIV-positive. Dr. Dickey testified that he "thought it was inappropriate to terminate [Couture]" and that he "encouraged [McCord] to find something [else at Bonfils]." Dickey Dep., Appellant's App. at 156. He further testified that he and McCord agreed that "[t]he pay should be something comparable" in terms of "pay and benefits" at any other position at Bonfils. Id.

McCord testified that, when she met with Couture, Couture "said that maybe this position wasn't a good fit, and were there other positions that he could do in the company?" McCord Dep., id. at 191-92. She further testified that she "printed out a copy of openings on [Bonfils'] Web site." Id. at 192. They "specifically talked about the community relations representative in Boulder and the laboratory production tech" positions. Id.[3] McCord told Couture that he was "the type of person that [they] wanted to have as an employee and that [they] hoped that [they] could come up with something that would meet his needs." Id. at 193.

The next day, Couture met with McCord to further discuss these other positions. McCord testified that Couture "said that he was very appreciative . . . [that] it had been handled professionally and respectfully." Id. at 194. However,

---

[3]There was some confusion in the terminology used to describe some of the other available positions.

Couture "had thought about it overnight. He really considered it, and he really wanted to be a phlebotomist, and that he would take the precautions necessary." Id. McCord testified that she told him she would discuss the situation again with Dr. Dickey and "get back to him." Id.

McCord met again with Dr. Dickey, who said that he was not "comfortable" with Couture continuing to train for the donor technician position but "that . . . he certainly, absolutely supported finding a position for [Couture] in the organization." Id. Accordingly, McCord met again with Couture and "told him that those positions that [they] had talked about the day before, [she would] be happy to set up some interviews for him and that [she would] . . . pay him for his time over that day and the next day to get . . . some interviews done and see if there was a position that he was interested in." Id. at 196.

Couture interviewed for the position of product management technician, one of the available jobs he and McCord had discussed. Following the interview, he told McCord he "would try it." Couture Dep., id. at 357. Couture testified that the base pay rate was the same for the product management technician position and the donor technician position. Id. at 355. McCord testified that, in considering the product management technician position for Couture, she "wanted him to be financially whole, however that occurred." McCord Dep., Appellee's Supp. App. at SA24. Couture likewise testified that McCord told him that the

"laboratory position that [he] was applying for had a lower rate of pay than the community blood drive phlebotomist, but she said she was willing to . . . compensate [him] so there would be not that much difference between the two salaries." Couture Dep., Appellant's App. at 354.

McCord further testified that Couture thought "that the advancement opportunities as a donor tech were greater than those he could hope for" in the product management technician position. McCord Dep., id. at 197. However, she stated that Bonfils was "going through some significant restructuring" and that "they were designing a system to have more opportunity for advancement" in the management technician position. Id. In comparing the two positions, she stated that the donor technician position "had more interaction with donors" whereas the "product management tech position had more interaction with the customers in our hospitals." Id.

Couture began training for the product management technician position on Monday, August 27. On Thursday, August 30, he "punched in for 5 or 10 minutes" and then left. Couture Dep., id. at 221. Later that morning, he left a voicemail message for McCord indicating that "[he] appreciate[d] the job offer, but this wasn't what [he] was looking for." Id. He explained that the job "just wasn't a good fit. [He] just wasn't happy doing the tasks assigned to [him]." Id. at 220. He further stated he "just chose not to [do the job], because [he] was just

-6-

unhappy." Id. Couture also testified that he thought the "opportunity for advancement" was better with the donor technician job, id., and that he preferred that position because it involved "local travel" and he "could wear scrubs that were Bonfils-provided." Id.

Still later that day, McCord called him and "said that she was sorry to lose [him] as an employee; that in the brief time that [he] was there, [he] exhibited qualities that Bonfils was looking for," and that "she would continue to keep her eyes open for positions that [he] was qualified for." Id. at 335.

On September 11, 2001, McCord drafted, but apparently never sent, a letter to Couture, stating that she was "disappointed that [he] chose not to stay with the company," and inviting him to let her know if there were other positions at Bonfils "[he] would like to be considered for." Id. at 398. In October 2001, Bonfils' counsel sent a letter to Couture stating its "unqualified willingness (and desire) to reinstate [Couture] in the last position he held." Id. at 401.

After receiving, at his request, a notice of right to sue from the Equal Employment Opportunity Commission, Couture filed this action. After both parties filed motions for summary judgment, the district court granted Bonfils' motion and dismissed all of Couture's claims. This appeal followed. Couture argues the district court erred when it granted summary judgment to Bonfils on the ground that Couture suffered no adverse employment action when Bonfils told

him he could no longer continue training for the donor technician job, but could train for the product management technician job. He further argues the district court should have denied summary judgment for Bonfils, and granted his motion for partial summary judgment, on the grounds that: (1) Bonfils regarded Couture as disabled, Couture is in fact disabled, and Bonfils terminated him from the donor technician position because of that disability, in violation of the ADA and the CADA; and (2) Bonfils failed to conduct an individualized inquiry into whether Couture could safely perform the donor technician job, and Couture presented undisputed evidence that he could perform it safely, thereby refuting Bonfils' claim that Couture presented a direct threat to the safety of others.

## DISCUSSION

We review the grant of summary judgment de novo, applying the same standard as did the district court. MacKenzie v. City & County of Denver, 414 F.3d 1266, 1273 (10th Cir. 2005). "Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Id. Further, we review the record and any reasonable inferences therefrom in the light most favorable to the nonmoving party. Id.

The ADA provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard

-8-

to job application procedures, the hiring, advancement, or discharge
of employees, employee compensation, job training, and other terms
conditions, and privileges of employment.

42 U.S.C. § 12112(a). The CADA similarly prohibits an employer from discriminating on the basis of disability against an otherwise qualified individual. Colo. Rev. Stat. § 24-34-402(a). "To establish a prima facie case of disability discrimination under the [ADA], a plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) [he] is qualified for [his] employment position; and (3) the defendant discriminated against [him] because of [his] disability." Doebele v. Sprint/United Mgmt. Co. , 342 F.3d 1117, 1128 (10th Cir. 2003). Under both the ADA and the CADA, a plaintiff must show that he suffered an "adverse employment action" as part of his *prima facie* case. See Meiners v. Univ. of Kan. , 359 F.3d 1222,1228-29 (10th Cir. 2004); Lawley v. Dep't of Higher Educ. , 36 P.3d 1239, 1247 (Colo. 2001) (en banc).

The district court granted summary judgment to Bonfils, concluding that Couture had suffered no adverse employment action when he was reassigned from the donor technician position to the product management technician position because Couture's "mere dissatisfaction with the alternative job is not sufficient to transform the transfer into an adverse employment action." Order at 5, Appellant's App. at 147. The court accordingly did not reach the remaining

issues. We agree with the district court that Couture's failure to demonstrate that he suffered an adverse employment action is fatal to his claims.

The Supreme Court has stated that employer conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Our circuit "liberally defines the phrase 'adverse employment action.'" Sanchez v. Denver Pub. Schs., 164 F.3d 527, 532 (10th Cir. 1998). It is "not simply limited to monetary losses in the form of wages or benefits. Instead, we take 'a case-by-case approach,' examining the unique factors relevant to the situation at hand." Id. (citation omitted). "One factor that strongly indicates a challenged action is an 'adverse employment action' is that the action causes 'harm to future employment prospects.'" Hillig v. Rumsfeld, 381 F.3d 1028, 1031 (10th Cir. 2004) (quoting Berry v. Stevinson Chevrolet, 74 F.3d 980, 986-87 (10th Cir. 1996)).

However, "we will not consider 'a mere inconvenience or an alteration of job responsibilities' to be an adverse employment action." Sanchez, 164 F.3d at 532 (quoting Crady v. Liberty Nat'l Bank-Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). We have similarly stated that "not everything that makes an employee

unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Mackenzie , 414 F.3d at 1279 (quoting Smart v. Ball State Univ. , 89 F.3d 437, 441 (7th Cir. 1996)); see also James v. Booz-Allen & Hamilton, Inc. , 368 F.3d 371, 377 (4th Cir. 2004) (holding that "an employee's dissatisfaction with this or that aspect of work does not mean an employer has committed an actionable adverse action").

In this case, Couture concedes that the base pay rate was the same in the product management technician position as in the donor technician position. He asserts that he would have had more opportunity to earn extra pay at the donor technician job. However, he has not alleged with any specificity the degree to which he would be entitled to such extra pay. "Unsupported conclusory allegations . . . do not create an issue of fact." MacKenzie , 414 F.3d at 1273. Furthermore, McCord testified that Bonfils was undergoing a restructuring that would have created more opportunities to earn similar shift differentials at the product management technician job.

Couture also alleges that the product management technician job was less interesting and involved less contact with donors and less local travel. He testified that he "just wasn't happy doing the tasks assigned to [him]," and that the job "wasn't what [he] was looking for." Couture Dep., Appellant's App. at

220-21. Mere dissatisfaction with the job to which an ADA plaintiff has been reassigned is insufficient to establish that the reassignment constituted an adverse employment action. Nor does Couture contest the fact, set out above, that he was offered other jobs at Bonfils, including the job of community relations representative in Boulder, where he would directly interact with the public and be the "face" of Bonfils in the community. While reassignment to an undesirable job may constitute an adverse employment action, reassignment to one which is simply undesired by the plaintiff is not. [4]

Couture places great reliance upon our decision in Hillig, in which we reiterated our policy of "liberally defin[ing]" the phrase "adverse employment action," Hillig, 381 F.3d at 1031, and indicated it is not necessarily limited to a "tangible employment action" such as "'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. (quoting Burlington Indus., 524 U.S. at 761). However, we also acknowledged that a plaintiff claiming a reassignment was an adverse employment action must show more "than a requirement to develop new

---

[4]Couture also attempts to cast his reassignment as a "firing" from his job as a donor technician and "rehiring" at the product management technician position. However, it is undisputed that he continued to be paid the entire time he worked at Bonfils and that Bonfils management engaged in an ongoing dialogue with him in an attempt to find another job to which he could be reassigned. Thus, we reject his argument that Bonfils "terminated" him and then "rehired" him.

skills." Id. at 1033 (discussing Tran v. Trs. of State Colls., 355 F.3d 1263, 1268 (10th Cir. 2004)). Moreover, in Hillig itself, the plaintiff demonstrated a "harm to future employment prospects" by showing that severely negative job references harmed her prospects of future employment. Id. at 1035. Nothing about Couture's reassignment to the product management technician position could conceivably hurt his future employment prospects. Hillig accordingly does not compel the conclusion that Couture suffered an adverse employment action.

In sum, as the district court found, Couture was merely dissatisfied with his new position. That alone is insufficient to establish that he experienced an adverse employment action.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Bonfils.[5]

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[5]Couture has filed a motion to strike portions of Appellee's supplemental appendix on various grounds. The motion has been referred to this panel. At the heart of the motion to strike lies a dispute about whether certain materials contained in the supplemental appendix were before the district court. For example, the parties disagree on whether certain pages from McCord's deposition testimony, which we quote infra, were before the court. That very language was in fact quoted to the district court, without objection by Couture, in Bonfils' motion for summary judgment. We are unconvinced that these materials were not fully before the court. We therefore deny the motion to strike.